Good morning may it please the court my name is Gia Kim appearing on behalf of appellant Manuel Moran. This is a classic third-party search case where law enforcement sought a warrant to look for Victor Flores and firearms possibly possessed by Victor Flores in the home of my client Mr. Moran. Does your client have a home or house have a reputation as being a safe house? There was nothing in the record that we would look at here to indicate that. Was it in fact being used as a safe house the night that the visitor was there? There was nothing I saw outside of affidavit in the record which consisted of the arrest report and the surveillance report that indicated that either. Well the surveillance report reported he went in early in the day and and there was one officer that remained there all the time before the execution of the neighborhood ruckus about it or somebody getting shot right? That's correct. Ok just want to understand the picture. So it's undisputed that Victor Flores who was the target of this warrant was a federal fugitive wanted on drug charges and that there was already a federal warrant out for his arrest and it's undisputed that he had been as Judge Beazer mentioned seen sitting in the Mr. Moran's apartment at about 10 20 p.m. and had not left as of the time the affidavit was sworn which was about 3 o 8 a.m. the following day. So we aren't disputing that there was probable cause to look for Victor Flores inside the apartment and didn't do so in the district court. However what we are disputing is that whether the affidavit in this case provided probable cause to by Victor Flores would be found in Mr. Moran's home. The Flores was a federal fugitive at the time correct? That's true. And a drug dealer known right? The affidavit said he was wanted on violations related to dangerous drugs. It didn't specifically say in what capacity. He also noted that he had prior convictions for weapons right? The affidavit stated that he had prior weapons violations. It mentioned arrests for assault with a dangerous weapon and murder. I do not believe that it mentioned convictions for those. You're right. It says suspect Flores has numerous arrests for weapons violations including assault with a deadly weapon and murder. Yes. That immediately follows that he was at large and the federal fugitive and considered to be armed and dangerous. That's true. That is the language of the warrant. Why wasn't that? Why doesn't that give him enough probable cause to look for weapons? While it's true that criminal history including arrests can be considered. It's a fugitive. This court held in Green Street that there still has to be a nexus in that there has to be a relationship connecting that criminal history to the residence. Well that's apparently what the magistrate found when he issued the warrant right? That's true your honor. The magistrate did find that however we're arguing that there are two parts to the affidavit in this case. There's the expertise portion which is sort of generalized about the agent's experience and then there's the probable cause portion. The affidavit needed to make a connection between the drugs and the guns and it did so on this stash house theory in the expertise portion saying what street gang members typically do you know in this agent's experience. I believe this is on ER 57. What street gang members who traffic in drugs typically do they often he's wrote share guns and perhaps stash them in places that where they won't be found by law enforcement and can be shared among the members of the gang. However this court held in Weber that when there is sort of this boilerplate expertise recital there still has to be a foundation connecting the target here Victor Flores to the class that's mentioned in the expertise. So here the probable cause warrant just said he was wanted for violations relating to dangerous drugs. It didn't say he was a drug trafficker even. It didn't say he was a street gang member engaged in drug trafficking such that the places where he would be hanging out would be you know. Well it said that you know it starts off by after it describes who Flores is said during the course of the surveillance special agents Chris Jackson and Luis Lopez observed and positively identified Flores from photographs provided walking from the area of 578 21st Street San Pedro. Then they say they follow him in the car to different locations. They lose him and then he he they return or he Flores returns back to the house to 578 21st. Why isn't that enough? That isn't enough because they see him leaving the residence and then they see him going back there and staying there. And he's under surveillance until the warrant is executed. The whole entire period between him first being spotted in the area of the warrant was you know a period less than seven hours. In the First Circuit case of current United States v. Kersey, which I think is probably on its facts the most similar to this case, there was a fugitive who was you know known to use automatic weapons to be armed and dangerous who had spent the night at a house. Again the First Circuit held they have a similar rule that mere presence isn't enough because the target of the search, even if he is a fugitive, might still only be a casual social guest in that residence. If there was something more, that something more could take various forms. It could take being seen over a longer period of time, could take be using keys or there was a case where someone had used an electronic remote for the parking gate or the or even a statement in the affidavit saying this house belongs to a known criminal confederate of the fugitive. That sort of showing is required still even in the case of a fugitive. I acknowledge that in certain cases you know the fact that the target of the warrant is a fugitive might affect what I think on the good faith exception the key case to look at is US v. Fowey. That was a case where this court held that the affidavit was just barely sufficient to meet the good faith exception and in that case it was another third-party search case where the target of the search was the defendant's ranch foreman. The ranch foreman's house had previously been searched and a large amount of that it was just barely sufficient because that ranch foreman had keys to the defendant's property, had photos and had even made statements which were disputed by the defendant that implicating the defendant in this drug trafficking. Similarly to this case there was an expertise recital in that case saying you know large-scale drug traffickers they typically utilize safe houses to stash their drugs. It's my belief that and if one could infer that this was that sort of safe house. I think the difference here is that there's nothing to connect up that statement of expertise with the particular residence. May it please the court. Jim Bowman on behalf of Appellee United States of America. I'd like to start by just responding to a couple of points that was made by defense counsel and also clarify a couple of issues. First although the affidavit itself mentions arrests and violations for various firearms and weapons charges. It also does mention that Mr. Flores is a parolee at large that's reflecting that there hadn't in fact been a conviction. Additionally looking at the Green Street case and the defendant arguing here that Green Street shows that there needs to be a nexus and that there was no nexus in this case as in Green Street. Green Street is actually very distinguishable from this case. In Green Street agents observed what they believe a location that they believe to be a hotbed for drug conspiracy. They saw a suspect to go to that location and then go to another location and then leave and they believe that simply because he had gone to a house and then left perhaps that meant that there was evidence of drug dealing. That would be analogous to the case here where if for example the agents sought to search one of the many residences that Mr. Flores went to before he returned to Mr. Moran's apartment. That's not what happened here. Instead they waited until they knew that he was staying there for the night which establishes a much stronger connection than was the case in Green Street. Do we know why they zeroed in on 578 21st Street San Pedro? Your Honor it is not I believe in the record except possibly I think there's a mention that they had a tip that Mr. Flores may be at that location. The agents went to that location and while they were there they observed Mr. Flores leaving from the direction of the apartment. They saw him go to several other places. They lost him and then later that night they saw him back at the apartment which gives rise to the inference that he left and came back. That this is the place where he's staying for that night. In talking about the expertise it is true that despite the lengthy recital of the agent's experience regarding gangs and how gangs use guns that he doesn't refer to the fact in the affidavit that Mr. Flores is a gang member and I would concede that therefore the discussion of his experience with gangs is not relevant to the probable cause determination. But what is relevant is Agent Lopez does say in his affidavit at Excerpt of Record 55 that he's participated in the arrest of hundreds of narcotics related suspects. He's also said that from these arrests and his experience he has learned their methods of possession of dangerous drugs as well as their methods for using weapons including firearms to commit their illegal crimes and protect their illegal activities. Therefore in addition to the facts that are disclosed in the affidavit he gives his expert opinion based on 11 and a half years of I'd like to talk briefly before going to the good faith exception just about the issue Was that in connection with the search per se or was it because they wanted to hold up the actual action until the middle of the night? I'm sorry. I'm not sure I understand the question. The implication that the defendant had access to firearms, was that in the affidavit demonstrating the justification for doing it in the middle of the night or was it general as to his conduct as they knew it all the time? I think that actually I believe that the affidavit specifically states that based on his criminal history including his violations involving firearms and the consideration that he's currently armed and dangerous, they request authorization to search the apartment for firearms. So They had no reason to believe he was possessed of firearms in the middle of the day this time, were they? You mean while they observed him going to the different homes? I think it's certainly possible and whether they would have had No, is it in the affidavit? I don't believe that there's any discussion of whether he had a firearm during the day to these other locations. That's what I thought. And actually that raises a good point, Your Honor, because this reflects the closer connection and the probable cause to search Mr. Moran's apartment as opposed to one of the other locations that Mr. Flores went to. When he goes to another apartment and is there for 10 minutes, you could simply arrest him at that time and do a search incident to arrest, perhaps find a firearm if he's carrying it. You don't need a search warrant based on the concern that you might have about him having a firearm. The reason why you need a search warrant in Mr. Moran's apartment and the reason why there's reason to believe he may have hidden a gun there is it's a location where he's bedded down for the night. It's a location he left and came back to. It's a place where he's staying. So there's a possibility that he could have stashed items, he could have spread his items around, and I think that that's recognized in the Ayers case where there's a son who's dealing drugs. The agents get a search warrant to search the parents' home. The son is no longer there, and after they search the son's bedroom and they don't find anything, they search the parents' bedroom, and they found methamphetamine in charge of the father. Now the father in that case said, look, it's not fair that you search my bedroom. And the court said, well, look, based on the fact that the son could stay there, there's any number of places he could have hidden those materials. So there's probable cause to search the entire residence. In discussing the probable cause in this case, the district court, the Honorable Florence Marie Cooper, found that there was probable cause for the warrant. The defendant claims that the warrant was based simply on mere presence, but the probable cause was far more specific. It was reasonable to believe that Mr. Flores would be armed based on his drug trafficking and his criminal record, as well as the agent's experience. And it was reasonable to believe he was staying overnight based on the fact that he had left and returned, and that the agents saw him there late at night and continuously observed him through the time of obtaining the warrant. And last, and this is the nexus point, there was at least a fair probability that any firearm that Mr. Flores had would be at that location based on the fact that he's a fugitive and that he was staying at that location overnight. In addressing the good faith exception, under Leon, obtaining a warrant from a judge is usually conclusive on the issue of good faith. In Leon, the Supreme Court said, in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the warrant is technically sufficient. This court, in the Weber case, acknowledges that agents are not lawyers. There's no claim that the magistrate judge abandoned his judicial role. There's no claim that the magistrate was misled by the affidavit. And there's no claim that the agent was dishonest or reckless in omitting information from the application. Therefore, the search must be upheld unless the officer could not have reasonably believed that there was probable cause. In other words, if the warrant was so bad, so far afield, that an agent would know that they couldn't rely on him. And this court has held that that's a very low standard. As long as there's a plausible theory, then the warrant, then the officer relies on it in good faith. And in discussing the Fowley case, the defendant points to that case as something that should command reversal here. But actually, in Fowley, the Ninth Circuit affirmed the search, upheld the search under the good faith exception. In fact, the defendant doesn't point to any cases where this court has found bad faith and thrown out a search under facts at all similar to this case. The warrant here, at the very least, set forth a plausible theory that there was a fugitive on the run from drug charges, that this court's case law recognizes the strong connection between guns and drugs, that he has a violent record of arrests and weapons violations, and that he was in the apartment that night. It's at least plausible that Mr. Flores would have a firearm with him at the place where he stayed. Finally, this court has also said that where an affidavit is enough to create disagreement among reasonably competent judges, then we can't expect an officer to somehow second-guess that decision. Here, two judges have already found that this warrant was supported by probable cause. So unless there are any other questions, I'll submit. Okay. Thank you. Well, I believe there's about a minute and a half for rebuttal. I'd just like to make a couple quick points. Sure. First, to respond to the government's last point about reasonable disagreement among judges. The government suggests in its brief, I believe on page 28, that the fact that the issuing judge and the district judge in this case found probable cause sufficient is sufficient in itself, basically, to make the warrant good. If that were the case, this court's de novo review of the district court's denial would be essentially meaningless. And I don't believe that this court is required to defer to the district court's ruling on the warrant. Second, just to quickly respond to the government's point about staying the night. This court's precedents clearly hold that being a mere casual social guest is not enough. In Kersey, the First Circuit found that casual social guest extended to overnight stays without anything more. The government distinguishes between the places where Mr. Flores stopped, Victor Flores stopped along his route, and this place, Mr. Moran's apartment, based on the amount of time he spent there and the fact that it was at night. However, there isn't a fugitive sort of exception to the Fourth Amendment such that any place where a fugitive spends four or five hours without anything more is sufficient to establish probable cause to search that place. Thank you. Thank you, Ms. Kim. United States v. Moran is submitted. Thank you, counsel. We appreciate your arguments. We'll move on to ASA Produce Company v. Everest National Insurance.
judges: Goodwin, Beezer, Paez